**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT<br>DISTRICT OF NEW JERSEY

BAYMONT FRANCHISE SYSTEMS, INC.,

    Plaintiff,

v.

THE BERNSTEIN COMPANY, LLC, *et al.*,

    Defendants.

No. 18cv620 (EP) (AME)

**MEMORANDUM ORDER**

**PADIN**, **District Judge.**

**I.     BACKGROUND**

Because the Court writes solely for the parties, the Court assumes their familiarity with the facts. Briefly, Plaintiff/franchisor Baymont Franchise Systems, Inc. ("Baymont") claims that Defendant/franchisee the Bernstein Company, LLC ("the LLC") breached its hotel franchise agreement (the "Agreement") and sues the LLC and its member and guarantor, Defendant David B. Bernstein, for damages stemming from that breach. The thrust of Defendants' defense is that Baymont first breached the Agreement by, among other things, adding unjustified fees.

The Court previously granted Baymont's summary judgment motion and entered judgment for Baymont. D.E.s 134 ("Opinion" or "Op."), 135. The Court found, as relevant here, that Defendants essentially conceded a central material fact: Defendants breached the Agreement and related guaranty when the LLC stopped paying fees owed. *See generally* Op. Defendants now move for reconsideration of that decision. D.E. 137 ("Mot."). Baymont opposes. D.E. 143 ("Opp'n"). For the reasons below, the Court will **DENY** the motion.[1]

---

[1] The Court decides the motion without oral argument. Fed. R. Civ. P. 78; L.Civ.R.78(b).

## II.     LEGAL STANDARDS

To prevail on a motion for reconsideration, the moving party must identify dispositive factual matters or controlling decisions of law overlooked by the court in reaching its earlier decision.  L.Civ R. 7.1(i); *Bryan v. Shah*, 351 F. Supp. 2d 295, 297 n.2 (D.N.J. 2005) (citing *Bowers v. Nat'l Collegiate Ath. Assoc.*, 130 F. Supp. 2d 610, 612 (D.N.J. 2001)).  The Third Circuit has held that a court may not grant a motion for reconsideration unless the moving party shows at least one of the following: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."  *Banda v. Burlington Cnty.*, 263 F. App'x 182, 183 (3d Cir. 2008) (citing *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999)).  This heavy burden cannot be met through "recapitulation of the cases and arguments considered by the court before rendering its original decision."  *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (quoting *Carteret Savings Bank, F.A. v. Shushan*, 721 F. Supp. 705, 709 (D.N.J. 1989)).

Nor does a party's mere disagreement with the court's ruling warrant reconsideration. *Boretsky v. New Jersey*, 433 Fed. App'x. 73, 78 (3d Cir. 2011).  A motion for reconsideration is "extremely limited" in scope and may not be used "as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011).  Courts in this District consistently view reconsideration as an "extraordinary" remedy, to be granted "sparingly."  *Brackett v. Ashcroft*, No. 03-3988, 2003 U.S. Dist. LEXIS 21312, at *2 (D.N.J. Oct. 7, 2003) (citing *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 215 F. Supp. 2d. 482, 507 (D.N.J. 2002)).

III.   ANALYSIS

Defendants make numerous arguments in support of its central thesis: the Court's Opinion was "made upon an incorrect basis and incomplete set of facts." Mot. at 2. Many of the arguments can be grouped into a first category comprising assertions that Baymont, not Defendants, breached the Agreement, thereby harming Defendants and/or making Defendants' performance impossible. Specifically, Defendants argue that: (1) Baymont charged a Loyalty Program Fee of 5% of gross sales every month, instead of 5% of "Qualifying [hotel] Stays" as defined by the Agreement, Mot. at 2; (2) Baymont failed to make available to Defendants a working reservation system until four to five weeks after Defendants' hotel opened, *id.* at 4; (3) Baymont added additional, "hidden" fees, *e.g.*, a $250 "retraining fee" triggered when Defendants did not enroll at least ten valid Loyalty Program enrollments, *id.* at 6; (4) Baymont failed to make available a witness competent to testify about line-item fees, *e.g.*, the 5% Loyalty Program Fee, *id.* at 11; and (5) Baymont violated the Agreement by suspending Defendants' hotel from Baymont's reservation system for over six months and "direct[ing] prospective guests to competing chain facilities," *id.* at 13.

The Court previously addressed the fundamental problem with Defendants' arguments: even if Defendants could prove that each contention constituted a breach of the Agreement, that did not permit Defendants to stop paying the fees owed, yet continue to enjoy the Agreement's benefits (operating Defendants' hotel under the Baymont name). *See* Op. at 14 (collecting cases) ("Under no circumstances may the non-breaching party stop performance *and* continue to take advantage of the contract's benefits."); *Radisson Hotels Int'l, Inc. v. Kaanam, Ltd. Liab. Co.*, No. 09-CV-1575, 2011 U.S. Dist. LEXIS 3208, at *7-8 (D. Minn. Jan. 12, 2011) (quoting Richard A. Lord, 13 *Williston on Contracts* § 39:32 (4th ed. 2010)) ("It is black-letter contract law that when a nonbreaching party responds to the other party's breach by choosing to keep the contract in force,

3

'the nonbreaching party, by electing to continue receiving benefits pursuant to the agreement, cannot then refuse to perform his or her part of the bargain.'"); *Int'l House of Pancakes, Inc. v. Albarghouthi*, No. 04-cv-02264, 2007 U.S. Dist. LEXIS 65934, at *37 (D. Colo. Sep. 6, 2007) ("At least some of the defaults declared by IHOP were valid and justified, and thus, IHOP's termination of the Franchise Agreement pursuant to these defaults was in no way improper.").

And second, Defendants did not previously, and do not now, provide any evidence that at least some of Baymont's charges were not justified—for example, by comparing each month's Loyalty Program Fee to that month's Gross Revenues to make sure that an accurate percentage was charged.

Defendants also argue that Baymont tortiously interfered with Defendants' business. Baymont, Defendants argue, permitted another Baymont Inn to open in Rome, New York, then "refus[ed] to allow the LLC to substitute another midscale franchise," *i.e.*, allow Defendants to operate the hotel under a different brand to avoid confusion with the other Baymont. Mot. at 8. These actions, Defendants argue, made business more difficult, lowered the value of Defendants' hotel, and discouraged a prospective buyer who withdrew from a purchase contract after learning of the competing Baymont franchise. *Id.* at 9.

Defendants have failed to provide any evidence that tortious interference occurred. Tortious interference requires a party to prove that the other "intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract." *MCO & EA LLC v. Silver Globe Inc.*, No. 20-17100, 2022 U.S. Dist. LEXIS 106684, at *9 (D.N.J. June 14, 2022). Here, the alleged interference is that Baymont devalued Defendants' hotel by permitting another Baymont 6.9 miles away. D.E. 122-3 at 41. But the Agreement explicitly

4

defined the Protected Territory as a four-mile radius, which excluded the competing Baymont. *See* Op. at 15.

Moreover, the same principle applies here as above regarding a contracting party's breach: the franchisor's breach does not entitle the franchisee to stop paying and continue to operate the franchise. "In the context of a franchise agreement, this principle has been held to bar the franchisee from raising affirmative defenses on the basis of the franchisor's . . . tortious interference with the franchise's business and reputation." *Knights Franchise Sys. v. P.C.P.S. Corp.*, No. 06-5243, 2009 U.S. Dist. LEXIS 98405, at *9 (D.N.J. Oct. 21, 2009) (cleaned up).

Finally, Defendants argue that the Court erred by not permitting Defendants to depose Baymont Director of Domestic Contracts Administration Kendra Mallet, Baymont's affiant in support of the underlying summary judgment motion. Mot. at 13. Thus, Defendants argue, Baymont's summary judgment motion was based on inadmissible hearsay. Id. at 14. However, Defendants did not in their original opposition, and do not now, provide any basis for doing so.

Fed. R. Civ. P. 56(e) requires that "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Defendants essentially reiterate their earlier argument that the documents attached to Mallet's affidavit cannot be considered because "it can reasonably be assumed that [Mallet] did not hold [her] position until recently," yet "claims to know virtually everything having to do with this case of her own personal knowledge." D.E. 122 at 36.

Defendants have not provided any support for their conclusion that Mallet lacked personal knowledge based on her position as Baymont's Director, Domestic Contracts Administration. But that allegation is based on "speculation and conjecture," which cannot be relied upon in opposition to a summary judgment motion. *Parker v. Sch. Dist. of Phila.*, 823 F. App'x 68, 72 (3d Cir. 2020)

5

("In response to a summary judgment motion, a litigant cannot rely on suspicions, simple assertions, or conclusory allegations. Nor can a summary judgment motion be defeated by speculation and conjecture, or conclusory, self-serving affidavits."); *see also Schwapp v. Town of Avon*, 118 F.3d 106, 111 (2d Cir. 1997) (quoting *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)) (holding that district court properly refused to consider affidavits containing "bald assertions and legal conclusions—for example, that an individual 'was always making racial slurs about minorities'"). Indeed, as the Court previously found, the documents attached to Mallet's affidavit supported the affidavit's material assertions. *See* Op. at 17.

Importantly, Defendants do not challenge the reliability of the evidence attached to Baymont's summary judgment motion, or the conclusion that the Court drew from the evidence: that Defendants admitted to failing to pay the required fees, albeit accompanied by explanations for that failure. *See id.* at 12. For the reasons detailed in the summary judgment Opinion, and reiterated above, Defendants do not explain how deposing Mallet—or, for that matter, how any other evidence—would demonstrate that Defendants did not breach the Agreement (and nevertheless continue operating under it). Rather, Defendants' arguments rest on the possibility of proving an immaterial fact: whether Baymont, like Defendants, also breached the Agreement. Accordingly, there is no basis for reconsideration of the Court's earlier Opinion granting summary judgment.

## IV. CONCLUSION AND ORDER

For the reasons above, it is

**ORDERED** that Defendants' motion for reconsideration (D.E. 137) is **DENIED**; and it is finally

**ORDERED** that Baymont shall file its fee application within 30 days.

December 5, 2023

_____
Evelyn Padin, U.S.D.J.

7