NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BAYMONT FRANCHISE SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> THE BERNSTEIN COMPANY, LLC, et al., <br><br> Defendants. | No. 18cv620 (EP) (AME) <br><br> **MEMORANDUM ORDER** |

**PADIN**, **District Judge.**

In this breach of contract case stemming from a Baymont hotel franchise, the Court previously entered judgment in favor of Plaintiff/franchisor Baymont Franchise Systems, Inc. against Defendant/franchisee Bernstein Company, LLC (the "LLC"), and Defendant/LLC guarantor David B. Bernstein. The Court previously granted summary judgment to Plaintiff, finding, as relevant here, that the LLC had breached a hotel franchise agreement (the "Agreement") with Plaintiff, and that Bernstein guaranteed, and was therefore liable for, the LLC's obligations.[1] See D.E.s 134 (granting summary judgment), 144 (denying reconsideration). The Court determined that attorneys' fees were warranted—Plaintiff now moves for them. D.E. 145 ("Mot."). For the reasons below, the Court will **GRANT** the request to the extent of awarding $104,701.21.

To determine what constitutes reasonable attorney's fees, the Court must calculate a "lodestar," which represents the reasonable "number of hours expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Washington v.*

---

[1] Because the Court writes only for the parties and has summarized these issues at length in prior opinions, it is unnecessary to detail the facts again here.

*Phila. Cnty. Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir. 1996) (same); *Schiffer Publ'g, Ltd. v. Chronicle Books, LLC*, 2005 WL 1244923, at *2 (E.D. Pa. May 24, 2005) (same).  Courts typically look to the prevailing market rates "in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation" to determine a reasonable hourly rate.  *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984).  And then courts have an "'affirmative function' to 'review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude' those which were not reasonably expended."  *Shiffer Publ'g, Ltd.*, 2005 WL 1244923, at *8 (quoting *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001)).

Regarding the number of hours reasonably expended, "a fee petition is required to be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed."  *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1037 (3d Cir. 1996).  "[C]omputer-generated summaries of time spent by each attorney and paralegal," if they provide "the date the activity took place," are sufficiently specific.  *Id.* at 1038.

Here, Plaintiff's counsel seeks $117,301.21, comprising: (1) a fixed fee amount of $12,600 (the "Fixed Fee"); and (2) $104,701.21 in hourly fees (the "Hourly Fees").  *See* D.E. 145-2 ("Couch Certif.").[2]  Defendants challenge both.  *See* D.E. 146 ("Opp'n").

According to Plaintiff's counsel, the $12,600 Fixed Fee covered "all work from February 2018 through July 2020."  Crouch Certif. ¶ 12.  This time frame, according to counsel, encompassed "consultations with the client, review of relevant client documents, researching potential causes of action, drafting, revising, and finalizing the Complaint, ascertaining the identity and location of Defendants, arranging for service of process, preparing written discovery requests

---

[2] Certification of Connell Foley, LLP partner Bryan P. Couch, Plaintiff's counsel.

2

and responses, and the taking of defendant Bernstein's deposition." *Id.* Because this was a fixed fee arrangement, counsel "does not possess itemized invoices or narrative time entries." *Id.*

Defendants argue that Plaintiff's counsel's vague assertion and failure to submit any contemporaneous time records doom their fee request. The Court agrees. Though district courts are cautioned not to take "too exacting a standard" when examining fee submissions, the Court must nevertheless have something to examine, *e.g.*, a "computer-generated chronological list of the tasks performed and the time devoted to those tasks" by specific staff members. *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1038 (3d Cir. 1996). Because Plaintiff's counsel presents only a brief list of work between 2018 through July 2020 without adding any other detail, the Court will **DENY** that portion of the fee petition.

The Hourly Fees of $104,701.21 are another story. Plaintiff's counsel submits detailed billing records from August 2020 through October 2023. *See* D.E. 145-2 at 6 (Ex. A to Crouch Certif.). The billing records detail each task and identify who performed it. Most importantly, the fees are not excessive. In a multi-year action, Plaintiff's counsel has expended substantial effort proceeding through discovery and, importantly, responding to numerous motions filed by Defendants. *See* D.E.s 25 (opinion denying motion to dismiss), 56 (denying motion to reconsider), 94 (denying Defendant's motion for leave to file a fifth amended answer), 100 (denying motion to reconsider), 105 (denying appeal of magistrate judge decision). Ultimately, Plaintiff prevailed on summary judgment, and again when Defendants moved to reconsider. *See* D.E.s 134-135 ("SJ Op."), 144 ("Recon Op.").

In opposition, Defendants argue that no fees should be awarded or, in the alternative, that the Court should award one-third of what Plaintiff's counsel seeks. The bulk of Defendants' opposition retreads—for at least the third time total—substantive arguments already rejected in

prior opinions, *e.g.*, that Plaintiff's conduct resulted in Defendants' breach of the franchise agreement, that Plaintiff's summary judgment affiant lacked personal knowledge, and that the Plaintiff overcharged Defendants. *Compare*, *e.g.*, Opp'n at 4 (blaming drop in sales on "there being two Baymonts in Rome, and partly, it's because we're not getting the support we needed from the reservation system from the outset") *with* SJ Op. at 15-16 (addressing reservation system competing Baymont, and Loyalty Program Charge arguments) *and* Recon. Op. at 5 (addressing affiant argument). As Defendants are well aware—they have already appealed—the proper forum for these arguments is an appeal. Raising these arguments again here borders on frivolous conduct.

Defendants' other argument fares no better. Defendants ask "how [Plaintiff's counsel] could justify," for example, billing 21 hours for responding to Defendants' motion for reconsideration when the issues "had already been researched and briefed." Opp'n at 17. This is an internally contradictory argument: that the *Court* should expend effort to revisit Defendants' rejected arguments, but that *Plaintiff's counsel* should not, and instead should have simply recycled their earlier work product to oppose the arguments. The Court declines to follow Defendants' reasoning.

**IT IS**, therefore,

**ORDERED** that Plaintiff's fee application (D.E. 145) is **GRANTED IN PART** to the extent that Plaintiff's counsel shall be awarded $104,701.21 in attorneys' fees; and it is further

**ORDERED** that Plaintiff shall submit a proposed judgment within seven days; and it is further

**ORDERED** that the Clerk of Court shall **STAY** this matter pending the result of the appeal before the Third Circuit; and it is finally

4

**ORDERED** that within seven days of the result of said appeal, the parties shall update the Court.

Dated: May 22, 2024

_____
Evelyn Padin, U.S.D.J.